1   DURIE TANGRI LLP
    DARALYN J. DURIE (SBN 169825)
2   ddurie@durietangri.com
    EUGENE NOVIKOV (SBN 257849)
3   enovikov@durietangri.com
    RAGHAV R. KRISHNAPRIYAN (SBN 273411)
4   rkrishnapriyan@durietangri.com
    217 Leidesdorff Street
5   San Francisco, CA  94111
    Telephone:    415-362-6666
6   Facsimile:    415-236-6300

7
    DURIE TANGRI LLP
8   KIRA A. DAVIS (SBN 332874)
    kdavis@durietangri.com
9   W. HENRY HUTTINGER (SBN 312843)
    hhuttinger@durietangri.com
10  953 East 3rd Street
    Los Angeles, CA  90013
11  Telephone:    213-992-4499
    Facsimile:    415-236-6300
12

13  Attorneys for Defendant
    RESEARCHHUB TECHNOLOGIES, INC.
14

15              IN THE UNITED STATES DISTRICT COURT

16              FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                        OAKLAND DIVISION

18  MOUSEBELT LABS PTE. LTD.,              Case No. 4:22-cv-04847-JST

19                    Plaintiff,           **DEFENDANTS' REPLY IN SUPPORT OF
                                           THEIR MOTION TO COMPEL
20         v.                              ARBITRATION AND TO STAY LITIGATION**

21  BRIAN ARMSTRONG, RESEARCHHUB           Date:    December 15, 2022
    TECHNOLOGIES, INC., RESEARCHHUB,       Ctrm:    6, 2nd Floor
22  LLC, COINBASE, INC., COINBASE ASSET    Judge:   Honorable Jon S. Tigar
    MANAGEMENT, INC., d/b/a COINBASE
23  VENTURES, and DOES 1-25, inclusive,

24                    Defendants.

25

26

27

28

## TABLE OF CONTENTS

I.    ARGUMENT ...........................................................................................................................7

      A.    Defendants Seek to Compel Arbitration Based on Equitable Estoppel, not as  Third-
            Party Beneficiaries ...........................................................................................................7

      B.    The Requirements of Equitable Estoppel Are Satisfied .....................................................7

            1.    Arbitration must be compelled under California law. ..............................................7

            2.    Federal common law does not apply, but it would not change the result..............11

            3.    Singapore law does not apply, but it would not change the result........................14

            4.    MouseBelt's attempts to distinguish Defendants' cases fail................................17

      C.    Defendants Did Not Waive Their Right to Compel Arbitration........................................18

II.   CONCLUSION.....................................................................................................................20

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND TO
STAY LITIGATION / CASE NO. 4:22-CV-04847-JST

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Almaznai v. S-L Distrib. Co., LLC,*
5
  No. 20-CV-08487-JST, 2021 WL 4457025 (N.D. Cal. Jun. 21, 2021) ...........................................9, 14

6
*Alvarez v. Sheraton Operating Corp.,*
  No. 21-55562, 2022 WL 67339 (9th Cir. Jan. 6, 2022) .........................................................................20
7

8
*Arthur Andersen LLP v. Carlisle,*
  556 U.S. 624 (2009) ...............................................................................................................................20

9
*Beitler & Assocs., Inc. v. Way Off Broadway, LLC,*
10
  No. B202735, 2008 WL 4228364 (Cal. Ct. App. Sept. 17, 2008) .........................................................18

11
*Bernhard v. Harrah's Club,*
  16 Cal.3d 313 (1976) .............................................................................................................................15
12

13
*Biernacki v. Serv. Corp. Int'l,*
  533 F. App'x 741 (9th Cir. 2013) ..........................................................................................................20

14
*Boucher v. All. Title Co.,*
15
  25 Cal. Rptr. 3d 440 (Cal. Ct. App. 2005) ............................................................................................18

16
*Britton v. Co-Op Banking Grp.,*
  916 F.2d 1405 (9th Cir. 1990) ...............................................................................................................19
17

18
*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,*
  816 F.3d 1208 (9th Cir. 2016) ............................................................................................................8, 9

19
*Cassirer v. Thyssen-Bornemisza Collection Found.,*
20
  862 F.3d 951 (9th Cir. 2017) .................................................................................................................15

21
*Cox v. Ocean View Hotel Corp.,*
  533 F.3d 1114 (9th Cir. 2008) ...............................................................................................................20
22

23
*Davis v. Einstein Noah Rest. Grp., Inc.,*
  No. 19-CV-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ..................................................8

24
*Droeger v. Welsh Sporting Goods Corp.,*
25
  541 F.2d 790 (9th Cir. 1976) .................................................................................................................19

26
*Franklin v. Community Regional Medical Center,*
  998 F.3d 867 (9th Cir. 2021) ......................................................................................................... passim
27

28
*GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC,*
  140 S. Ct. 1637 (2020) .....................................................................................................................8, 9, 10

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND TO
STAY LITIGATION / CASE NO. 4:22-CV-04847-JST

*Glob. Sec. & Commc'ns, Inc. v. AT&T*,
    191 F.3d 460 (9th Cir. 1999) ............................................................................................19

*Groom v. Health Net*,
    98 Cal. Rptr. 2d 836 (Cal. Ct. App. 2000) ......................................................................20

*In re Henson*,
    869 F.3d 1052 (9th Cir. 2017) ..............................................................................8, 14, 15

*Hoover v. Am. Income Life Ins. Co.*,
    142 Cal. Rptr. 3d 312 (Cal. Ct. App. 2012).....................................................................20

*Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*,
    631 F.3d 1133 (9th Cir. 2011) ..........................................................................................9

*Jiang Haiying v Tan Lim Hui*
    [2009] SGHC 42 ..............................................................................................................16

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ...................................................................................10, 11

*Ma v. Golden State Renaissance Ventures, LLC*,
    No. 3:21-CV-00856-WHO, 2021 WL 2190912 (N.D. Cal. May 31, 2021)......................8

*Mahan v. Perez*,
    No. 16-CV-02024-JST, 2016 WL 7048997 (N.D. Cal. Dec. 5, 2016) ..............................14

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ..........................................................................................18

*Messih v. Mercedes-Benz USA, LLC*,
    No. 21-cv-03032-WHO, 2021 WL 2588977 (N.D. Cal. June 24, 2021)...........................9

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
    109 Cal. App. 4th 1705 (2003) ...................................................................................10, 18

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ..............................................................................................9

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
    111 Cal. Rptr. 3d 876 (Cal. Ct. App. 2010).....................................................................17

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708, 1712 (2022)............................................................................................20

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ...............................................................................6, 11, 12

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) .......................................................................................6, 8

3

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459 (1992) ................................................................................................15

*Newirth v. Aegis Senior Communities, LLC,*
    931 F.3d 935 (9th Cir. 2019) ............................................................................19, 20

*In re Pac. Fertility Ctr. Litig.,*
    814 F. App'x 206 (9th Cir. 2020) ..................................................................................8

*Parmod Kumar Verma v Unique Food Partners Pte Ltd*
    [2020] SGCA 254 ......................................................................................................16

*Pokorny v. Quixtar, Inc.,*
    601 F.3d 987 (9th Cir. 2010) ....................................................................................15

*Setty v. Shrinivas Sugandhalaya LLP,*
    3 F.4th 1166 (9th Cir. 2021) ................................................................8, 10, 12, 14

*Shivkov v. Artex Risk Sols., Inc.,*
    974 F.3d 1051 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 2856 (2021) ......................8

*Sokol Holdings, Inc. v. BMB Munai, Inc.,*
    542 F.3d 354 (2d Cir. 2008).......................................................................................12

*Sovak v. Chugai Pharmaceutical Co.,*
    280 F.3d 1266, 1270 (9th Cir. 2002) .......................................................................20

*Tectura Corp. v. LaBudde Grp., Inc.,*
    No. C 08-5752 SBA, 2009 WL 4723340 (N.D. Cal. Dec. 4, 2009) ..........................18

*Torbit, Inc. v. Datanyze, Inc.,*
    No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013).....................17

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory,*
    44 Cal. Rptr. 3d 817 (Cal. Ct. App. 2006), *as modified* (July 20, 2006) .................18

*Uptown Drug Co. v. CVS Caremark Corp.,*
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) ......................................................6, 8, 10, 17

*Washington Mut. Bank, FA v. Sup. Ct.,*
    24 Cal. 4th 906 (2001) .............................................................................................15

*Yang v. Majestic Blue Fisheries, LLC,*
    876 F.3d 996 (9th Cir. 2017) ......................................................................................8

**Statutes**

Federal Arbitration Act 9 U.S.C. § 203 .............................................................................9

Federal Arbitration Act 9 U.S.C. § 205 .............................................................................9

**Other Authorities**

Restatement (Second) of Conflict of Laws ...............................................................................15

Restatement (Third) of Conflict of Laws .................................................................................17

Restatement (Third) Of Agency ...............................................................................................19

1    MouseBelt's opposition brief concedes that its claims in this case are wedded to contracts it

2    signed containing arbitration clauses.  This concession confirms that under the controlling legal standard,

3    this case belongs in arbitration in MouseBelt's home country of Singapore.  In particular, MouseBelt

4    does not dispute that:  (1) Each of its claims fall within broad arbitration provisions in its two contracts

5    with Knowledgr (the "Agreements"), *see* Motion to Compel Arbitration (Dkt. 11) at 7; (2) MouseBelt

6    must rely on the terms of the Agreements in asserting claims that are intimately founded in and

7    intertwined with those Agreements, *id.* at 11 (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th

8    Cir. 2013)); and (3) MouseBelt alleges substantially interdependent and concerted misconduct by the

9    defendants and a signatory to the contracts (Knowledgr's CEO, Patrick Joyce), misconduct founded in or

10   intimately connected with the obligations of the Agreements, *id.*  Under the tests laid out in controlling

11   Ninth Circuit cases like *Murphy* and *Franklin v. Community Regional Medical Center*, 998 F.3d 867,

12   870–71 (9th Cir. 2021), and this Court's prior decision in *Uptown Drug Co. v. CVS Caremark Corp.*, 962

13   F. Supp. 2d 1172, 1184 (N.D. Cal. 2013), nothing more is required to compel arbitration.  MouseBelt

14   should not be permitted to "play[] fast and loose with its commitment to arbitrate" by "mak[ing] use of a

15   contract containing an arbitration clause and then attempt[ing] to avoid the duty to arbitrate by defining

16   the forum in which the dispute will be resolved."  *Franklin*, 998 F.3d at 871.

17   Faced with these irrefutable facts, MouseBelt advocates imposing a new legal requirement that a

18   defendant must have a close relationship with one of the signatories to the Agreements to invoke equitable

19   estoppel.  But this argument goes wrong at every turn:  First, Supreme Court and Ninth Circuit decisions

20   demonstrate that it is California's law of equitable estoppel—which imposes no such requirement—that

21   applies here.  Second, even if federal common law or Singapore law governed the equitable estoppel

22   analysis, neither jurisdiction imposes such a requirement.  MouseBelt's argument otherwise is based on a

23   misleadingly selective quotation from an inapposite Ninth Circuit case (*Mundi v. Union Sec. Life Ins. Co.*,

24   555 F.3d 1042, 1046 (9th Cir. 2009)) that in fact relates to a *non-signatory suing a signatory*, and

25   otherwise rests almost entirely on out-of-circuit law.  Third, even if Defendants were required to have a

26   relationship with a signatory, MouseBelt's own allegations confirm that such a relationship exists, both

27   because it claims Brian Armstrong invested in Knowledgr while acting as the other Defendants' agent and

28   because it alleges (and withstood demurrer based on the allegation) that Defendants' relationship with

1  MouseBelt was so significant as to give rise to a duty of care.

2  MouseBelt's argument that Defendants waived their right to compel arbitration also fails.

3  MouseBelt makes no argument that Defendants undertook actions inconsistent with their right to arbitrate

4  *after MouseBelt produced the Agreements*.  Contrary to MouseBelt's claims, Patrick Joyce's awareness

5  of the confidential Agreements, gained through his prior work, is not imputable to ResearchHub—much

6  less to Armstrong and the Coinbase Defendants.  Both the law and common sense dictate that there can

7  be no waiver of a right to arbitrate before Defendants had knowledge of that right.

8  **I.    ARGUMENT**

9      **A.    Defendants Seek to Compel Arbitration Based on Equitable Estoppel, not as
            Third-Party Beneficiaries**
10

11      As a preliminary matter, the opposition brief repeatedly mischaracterizes the basis for

12  Defendants' motion to compel arbitration.  Citing its contracts with Knowledgr, MouseBelt argues that

13  they "repudiate application to third parties."  Opp. at 6; *see also id.* at 3.  But MouseBelt relies upon a

14  contractual provision entitled "No Third-Party Beneficiaries" that states, "Except as provided to the

15  contrary, a person not a party to this Agreement shall have no right ***under the Contracts (Rights of Third***

16  ***Parties) Act (Cap. 53B)*** to enforce any of the terms of this Agreement," obscuring the reference to the

17  Singapore statute with an ellipsis.  Dkt. 8-2 at 13; Dkt. 8-3 at 13 (emphasis added); *see* Opp. at 12.

18      Defendants do not seek to enforce any rights as third-party beneficiaries, much less under the

19  referenced Singapore statute.  They make no claim for breach of contract.  They assert no interests in the

20  MouseBelt agreements.  Instead, Defendants seek to compel arbitration based *solely and exclusively on the*

21  *doctrine of equitable estoppel*, which in this context is invoked to prevent the inequitable result of

22  allowing MouseBelt to obtain the benefits of contractual terms it favors while evading terms it does not,

23  such as its agreement to arbitrate disputes arising under those agreements.

24      **B.    The Requirements of Equitable Estoppel Are Satisfied**

25          **1.    Arbitration must be compelled under California law.**

26              **a.    California law, not federal common law, governs equitable estoppel.**

27  "[T]he United States Supreme Court has held that a litigant who is not a party to an arbitration

28  agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to

enforce the agreement." *Franklin*, 998 F.3d at 870 (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)).  Time and again, the Ninth Circuit has applied state contract law to assess the arbitrability of disputes based on equitable estoppel.  *E.g.*, *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1070 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 2856 (2021); *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 208 (9th Cir. 2020); *Murphy*, 724 F.3d at 1229; *In re Henson*, 869 F.3d 1052, 1056-57 (9th Cir. 2017).  Numerous district courts, including this one, have followed suit.  *See Uptown Drug*, 962 F. Supp. 2d at 1184; *Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-CV-00771-JSW, 2019 WL 6835717, at *4 (N.D. Cal. Oct. 23, 2019); *Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-CV-00856-WHO, 2021 WL 2190912, at *9 (N.D. Cal. May 31, 2021).

MouseBelt urges this Court to ignore this precedent.  First, MouseBelt claims *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir. 2021), stands for the proposition that federal common law governs the application of equitable estoppel in a case like this.  Opp. at 7.  But *Setty*, which involved federal trademark claims, held only that federal common law applies "[i]n cases involving the New York Convention, in determining the arbitrability of ***federal claims*** by or against non-signatories."  *Setty*, 3 F.4th at 1168 (emphasis added).  All the claims in this case are California state law claims.  Opp. at 7.

Second, MouseBelt relies on *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).  Opp. at 7.  But *Casa del Caffe* did not involve equitable estoppel; it concerned only whether an arbitration agreement was a valid contract—which here is undisputed.  *See* 816 F.3d at 1211 ("Because this case arises under Chapter 2 of the Federal Arbitration Act, the issue of whether the Commercial Contract *constituted a binding agreement* is governed by federal common law." (emphasis added)).  There was no attempt by a nonsignatory to compel arbitration through contract doctrines.

Further, MouseBelt's reliance on *Casa del Caffe* to argue for applying federal law is foreclosed by the Supreme Court's intervening decision in *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020).  *GE Energy* held that the New York Convention does not preclude application of "state-law doctrines related to the enforcement of arbitration agreements," which "include doctrines that authorize the enforcement of a contract by a nonsignatory," such as equitable estoppel.  *GE Energy*, 140 S. Ct. at 1643–44.  In so holding, it overruled the Ninth Circuit's precedent in *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017), which barred nonsignatories from

8

invoking state-law equitable estoppel doctrines in New York Convention cases.  *See GE Energy*, 140 S. Ct. at 1643 n.2.  Thus, to the extent *Casa del Caffe* has anything to say about equitable estoppel (it does not), it is no longer good law.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

Third, MouseBelt claims that the existence of federal question jurisdiction compels application of federal common law to the equitable estoppel issue.  Opp. at 7–8.  This too is wrong.  As an initial matter, MouseBelt relies on the *Almaznai* decision for this proposition, but that case involved claims based on a federal statute and concerned *contract formation*, not equitable estoppel.  *See Almaznai v. S-L Distrib. Co., LLC*, No. 20-CV-08487-JST, 2021 WL 4457025, at *12 (N.D. Cal. Jun. 21, 2021).  More fundamentally, however, MouseBelt's argument is misguided because it is premised on the notion that a federal question is the basis for this Court's subject matter jurisdiction.  It is not.  *See, e.g.*, *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1136-39 (9th Cir. 2011) (distinguishing between "removal jurisdiction" under 9 U.S.C. § 205 and "subject matter jurisdiction," and finding that district court had diversity jurisdiction in a case removed pursuant to Chapter 2 of the FAA).  Here, Defendants removed the case based on the existence of an arbitration clause governed by the New York Convention, under which this case is "*deemed* to arise under the laws and treaties of the United States," including for purposes of removal.  9 U.S.C. § 203 (emphasis added); *see also id.* § 205.  But the basis for this Court's subject matter jurisdiction is diversity, as none of MouseBelt's claims arise federal law, the parties are diverse, and the amount in controversy is satisfied.  Dkt. 1 ¶ 19.  Thus, even if the basis for the Court's jurisdiction determined the applicable law to apply to equitable estoppel (it does not), MouseBelt misinterprets that basis.  California law applies where the Court sits in diversity.  *See, e.g.*, *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977, at *9–*12 (N.D. Cal. June 24, 2021) (applying California law on equitable estoppel in diversity jurisdiction case).

Fourth, and finally, MouseBelt asks this Court to ignore the precedential decision in *Franklin* on the purported basis that "the court conducted no analysis regarding whether California or federal common law should apply" and did not "identify the basis for the court's subject matter jurisdiction."   The latter point is irrelevant to the extent that MouseBelt is arguing that federal common law applies where a federal question is the basis for the Court's subject matter jurisdiction, given that diversity jurisdiction exists here, and the former is simply wrong.  *Franklin* analyzed prior precedent and correctly concluded, based on that

precedent, that "California law applies here." *Franklin*, 998 F.3d at 870–71, 874.  While MouseBelt

suggests that *Franklin* is incompatible with the Ninth Circuit's subsequent decision in *Setty*, Opp. at 8, the

*Setty* court itself explicitly limited its holding to cases involving federal claims, which this case lacks.

*Setty*, 3 F.4th at 1168.  Nor is there any basis to invent a different rule for Chapter 2 of the FAA (codifying

the New York Convention), as opposed to Chapter 1 ("General Provisions").  *GE Energy*, 140 S. Ct. at

1644.  As the Supreme Court has explained, "Chapter 2 . . . states that 'Chapter 1 applies to actions and

proceedings brought under this chapter to the extent that [Chapter 1] is not in conflict with this chapter or

the Convention.'"  *Id.* (alteration in original).  *Franklin* thus cannot be distinguished on the basis that it did

not involve the New York Convention, and MouseBelt cites no law to suggest that a different result should

apply where, as here, only state law claims are pled.

In short, California law applies to the question of equitable estoppel.

**b.   California's test for equitable estoppel does not look to whether defendants had a relationship with either party.**

California's test for equitable estoppel is straightforward:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances:  (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128–29 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009));

*Uptown Drug*, 962 F. Supp. 2d at 1184 (same); *see also Metalclad Corp. v. Ventana Env't

Organizational P'ship*, 109 Cal. App. 4th 1705, 1717 (2003).  Nowhere does this test require any

particular relationship between a defendant and a signatory to the arbitration agreement beyond what the

standard itself sets forth—as MouseBelt implicitly concedes by urging the Court to disregard "the various

ways in which the California standard is expressed."  Opp. at 16–17.  And MouseBelt *does not dispute*

anywhere in its opposition that:  (1) it must rely on the terms of the Agreements in asserting its claims

against Defendants; (2) its claims are intimately founded in and intertwined with the Agreements; or (3)

it alleges substantially interdependent and concerted misconduct by Defendants and another signatory

(Knowledgr's CEO) and those allegations are founded in or intimately connected with the obligations of

the Agreement—because these requirements are in fact met.  Dkt. 11 at 11-15.  On the last point, MouseBelt attempts to draw a distinction between Joyce and his company Knowledgr, but that argument ignores that MouseBelt's complaint alleges that Joyce's misconduct was undertaken "while still acting as Knowledgr CEO."  Dkt. 11 at 14 (citing FAC ¶ 81).

### 2.    Federal common law does not apply, but it would not change the result.

#### a.    The federal common law standard is not materially different.

The linchpin of MouseBelt's opposition is that federal common law imposes an additional requirement to apply equitable estoppel:  that the defendants must have a "relationship to either of the contracting parties."  Opp. at 8.  MouseBelt purports to derive this requirement from the Ninth Circuit's decision in *Mundi*, but does so by selectively omitting crucial language from that case.

The language from *Mundi* that MouseBelt quotes and relies upon was addressing claims brought by *nonsignatories* to the arbitration agreement.  That is apparent from the very sentence that MouseBelt excerpts when it is quoted in full:

> We have examined two types of equitable estoppel in the arbitration context . . . Under the second, a signatory may be required to arbitrate a claim ***brought by a nonsignatory*** because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.

*Mundi*, 555 F.3d at 1046 (emphasis added, quotation marks omitted); *see also id.* ("And, in light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel ***of third parties*** in an arbitration context beyond the very narrow confines delineated in these two lines of cases." (emphasis added)).  MouseBelt elides the language emphasized above and asserts that the quoted standard applies to "a nonsignatory seeking to compel arbitration," turning *Mundi* on its head.  Opp. at 9.  But *Mundi* in fact took pains to note that "[n]either line of cases [referenced in the quotation] addresses the precise situation we face."  *Mundi*, 555 F.3d at 1046.  The Ninth Circuit itself has explained that "the *Mundi* court held that in order for a nonsignatory to compel a signatory to arbitrate, the signatory's claims must be 'intertwined with,' 'arise out of,' or 'relate directly to' the contract providing for arbitration," not that any sort of relationship between the defendant and a signatory is required.  *Kramer*, 705 F.3d at 1130 n.5.

1    MouseBelt compounds the mischaracterizations by suggesting that *Mundi* endorsed the Second

2   Circuit's test in *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008).  Opp. at 9.  *Mundi*

3   simply described *Sokol* without expressing agreement with its holding, before going on to similarly

4   describe two Fourth Circuit cases that did *not* require a relationship between the nonsignatory defendant

5   and a party to the arbitration agreement.  *Mundi*, 555 F.3d at 1046–47.  And in resolving the dispute

6   before it, the *Mundi* court held that equitable estoppel did not apply simply because the plaintiff's claim

7   was not "intertwined with the contract providing for arbitration" and "d[id] not require examination of

8   any provisions" of that contract, without ever suggesting that a relationship with a signatory was a *sine*

9   *qua non* of equitable estoppel.  *Id.* at 1047.  In short, *Mundi*'s analysis of claims asserted by

10   nonsignatories against signatories cannot be fairly interpreted as establishing an extra requirement under

11   the federal common law of the Ninth Circuit that a nonsignatory have any sort of relationship with a

12   signatory to an arbitration agreement to invoke equitable estoppel.  *See Franklin*, 998 F.3d at 873–74

13   (Ninth Circuit law on equitable estoppel is consistent with California's).

14    MouseBelt next asserts that "[t]he *Setty* court identified *Mundi* as providing the relevant Ninth

15   Circuit standard under federal common law."  Opp. at 9.  But *Setty* merely cited *Mundi* for the *rationale*

16   behind equitable estoppel—to "preclude[] a party from claiming the benefits of a contract while

17   simultaneously attempting to avoid the burdens that contract imposes"—a sentence that could have been

18   written with MouseBelt's artful attempts to avoid arbitration in mind.  *Setty*, 3 F.4th at 1168–69.

19   Similarly, Justice Sotomayor's view that application of equitable estoppel should "be rooted in the

20   principle of consent to arbitrate" would be *vindicated* by requiring MouseBelt to abide by its arbitration

21   clauses.  Opp. at 10.  Finally, MouseBelt relies on a series of non-binding district court decisions, all of

22   which long predate the applicable Ninth Circuit and Supreme Court caselaw.  Opp. at 10–11.

23    In short, the applicable test in the Ninth Circuit under federal common law closely parallels

24   California's.  In articulating the federal test, *Setty* explained that "for equitable estoppel to apply, it is

25   essential that the subject matter of the dispute is intertwined with the contract providing for arbitration."

26   *Setty*, 3 F.4th at 1169 (cleaned up).  *Setty* nowhere suggested that any particular relationship with a

27   signatory to the agreement was necessary.  Thus, whether California law applies or federal common law

28   does, there is no requirement that Defendants have a relationship with a signatory to the Agreements.

**b.** **Even if a relationship between Defendants and a signatory to the Agreements was required, one exists.**

Even if federal common law applied here (it does not) and MouseBelt had correctly articulated the test for equitable estoppel under it (it did not), Defendants would still prevail on their motion. This is because MouseBelt affirmatively alleges the existence of a sufficient relationship with the Defendants.

MouseBelt now asserts that there was no "relationship between Defendants and either MouseBelt or Knowledgr." Opp. at 12. But its own pleadings tell a different story. First, MouseBelt's complaint alleges that Armstrong, like MouseBelt, was an investor in Knowledgr, a signatory to the Agreements. Dkt. 1-39 ¶ 71 ("On or about mid-July 2019, Armstrong wired $50,000 to Knowledgr and executed an agreement to complete his investment."). MouseBelt further alleges that "Armstrong acted as ResearchHub, Coinbase and Coinbase Ventures' actual and apparent agent." *Id.* ¶ 7. Thus, MouseBelt's own complaint makes clear that Armstrong was a co-investor with Knowledgr, a relationship that MouseBelt asserts should be imputed to the other Defendants. MouseBelt entirely fails to mention this investor relationship in its opposition, despite making it a centerpiece of the complaint. Instead, MouseBelt suggests that the relationship must "have made it reasonably foreseeable that MouseBelt would have deemed to have consented to arbitrate" or that the relationship had to be present at the time the Agreements were executed. Opp. at 12. These requirements are not derived from any case law.

Second, in opposing Defendants' demurrers in state court, MouseBelt argued repeatedly and ultimately successfully that Defendants' relationship with MouseBelt was so significant that it gave rise to a duty of care, as would be required for its negligent interference with prospective economic advantage claims to survive. *See* Dkt. 1-25 at 19, 1-26 at 19, 1-27 at 16, 1-43 at 18. As MouseBelt argued, "[t]he key component in determining whether the *relationship* between plaintiff and defendant in such cases gives rise to a duty of care is the foreseeability of the harm suffered by the plaintiff." Dkt. 1-43 at 18 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 349 (1997)) (emphasis added). Having argued the existence of a special relationship with Defendants in order to overcome demurrer—and having had the argument accepted by the state court—MouseBelt is now judicially estopped from contending otherwise. Judicial estoppel applies when: (a) a party's later position is "clearly inconsistent" with its earlier position; (b) the party has succeeded in persuading a court to accept the party's earlier position; and (c)

1    whether the party would derive an unfair advantage if not estopped.  *Mahan v. Perez*, No. 16-CV-02024-

2    JST, 2016 WL 7048997, at *4 (N.D. Cal. Dec. 5, 2016).  All three requirements are met here:

3    (a) MouseBelt now contends that it has no special relationship with Defendants sufficient to arbitrate its

4    claims against them, when it previously argued the opposite to sustain its claim that Defendants owed

5    MouseBelt a duty of care; (b) it succeeded in persuading a court to accept its position, Dkt. 1-50 at 6–7;

6    and (c) it would be unfair to allow MouseBelt to overcome demurrer by claiming a relationship with

7    Defendants to support its claims but avoid application of the arbitration clause by arguing the opposite.

8         Thus, even if a relationship between Defendants and either MouseBelt or Knowledgr were

9    required, MouseBelt has affirmatively alleged and argued the existence of such a relationship, and it is

10   now estopped from arguing the opposite.

11        **3.    Singapore law does not apply, but it would not change the result.**

12             **a.    Singapore law does not apply to the equitable estoppel issue.**

13        MouseBelt belatedly (and inconsistently) acknowledges that under controlling precedent, "a

14   nonsignatory may invoke the FAA 'if the relevant state contract law allows him to enforce the

15   agreement,'" but contends that here the relevant "state contract law" is Singapore's.  Opp. at 14 (quoting

16   *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  MouseBelt's basis for so arguing is a

17   choice-of-law provision found in both Agreements.  Opp. at 14.  MouseBelt is incorrect that the choice-

18   of-law clause dictates the law that applies to equitable estoppel.

19        "[W]hether [a defendant] may enforce the [arbitration agreement] as a non-signatory is a

20   'threshold issue' for which we do not look to the agreement itself."  *Setty*, 3 F.4th at 1168.  That is why in

21   *Henson* the Ninth Circuit granted a writ of mandamus on the basis that in evaluating equitable estoppel

22   "[t]he district court erred by applying New York law based on the [arbitration agreement's] choice-of-law

23   provision," and held that "[i]nstead, we apply the choice-of-law principles of the forum state"—there, as

24   here, California.  869 F.3d at 1059.  Defendants, as nonsignatories, did not consent to the choice-of-law

25   clauses, and, as this Court has recognized, there is a difference between holding MouseBelt to an

26   arbitration clause that it agreed to and enforcing an agreement against nonsignatories.  *Almaznai*, 2021

27   WL 4457025, at *12 ("Allowing a nonsignatory to enforce an agreement against a signatory does not

28   raise consent issues, because the signatory against whom the agreement is being enforced assented to the

1  terms of the agreement.  The same is not true where the person against whom the agreement is being

2  enforced did not sign or consent to it."  (citations omitted)).

3   Significantly, in invoking California's choice-of-law principles to decide that California's

4  substantive law applied to the issue of equitable estoppel, *Henson* applied California's standard

5  "governmental interests" test, *not* the test that MouseBelt quotes from *Nedlloyd Lines B.V. v. Superior*

6  *Court*, 3 Cal. 4th 459 (1992), *see* Opp. at 14.  *Henson*, 869 F.3d at 1059–60.  The latter test applies only

7  when there is a choice-of-law provision at issue, *see Washington Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th

8  906, 914–15 (2001), and *Henson*'s decision not to apply it demonstrates that choice-of-law provisions in

9  agreements Defendants did not enter into should be ignored in deciding which jurisdiction's law applies

10  to the question of equitable estoppel.

11   The governmental interests test looks to:  (1) whether the law of the two jurisdictions being

12  compared differs; (2) if so, whether both jurisdictions have an interest in having their own law applied;

13  and (3) if both do, whose interest would be the most impaired.  *Id.* at 920.  In comparing Singapore and

14  California law, MouseBelt has made no attempt to show that (2) and (3) are satisfied, failing to meet its

15  burden to show that foreign law applies.  *See Bernhard v. Harrah's Club*, 16 Cal.3d 313, 317–18 (1976)

16  ("[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes

17  the law of a foreign state" and "demonstrate[s] that the latter rule of decision . . . is an appropriate one

18  . . . ." (first alteration in original)); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010).  Thus,

19  California's choice-of-law principles require the application of California law—not Singapore law.

20   MouseBelt contends that federal choice-of-law principles apply, though it bases this on its

21  incorrect view that the Court's jurisdiction is based on a federal question and concedes that California's

22  choice-of-law principles would apply if this were a diversity case—which it is.  Opp. at 14.  Regardless,

23  the answer is the same under federal law.  Federal choice-of-law principles require "follow[ing] the

24  approach of the Restatement (Second) of Conflict of Laws."  *Cassirer v. Thyssen-Bornemisza Collection*

25  *Found.*, 862 F.3d 951, 961 (9th Cir. 2017).  The Restatement lists a number of applicable factors,

26  including, like California, "the relative interests of those states in the determination of a particular issue."

27  Restatement (Second) of Conflict of Laws § 6.  MouseBelt has not even attempted to show that these

28  factors weigh in favor of Singapore law.  As a result, there is no basis for this Court to apply Singapore

1    law to the equitable estoppel issue.

2          **b.    Even if Singapore law applied, it would not preclude application of**
3          **equitable estoppel.**

4          Even if the Singapore law of equitable estoppel did apply, it does not impose any requirement that

5    would preclude application of equitable estoppel here.  MouseBelt concedes that Singapore recognizes

6    equitable estoppel in principle.  Opp. at 15.  In *Jiang*, the Singapore Supreme Court case primarily relied

7    upon by MouseBelt, the court considered "[w]hether the claims alleged by the plaintiff against the

8    defendants are so intertwined with the [arbitration agreement] that the doctrine of equitable estoppel is

9    applicable," paralleling the California test—and not requiring any particular relationship with a signatory

10   to the agreement.  *Jiang Haiying v Tan Lim Hui* [2009] SGHC 42, at ¶ 28 (Dkt. 23-2).  Here, of course,

11   MouseBelt does not dispute that its claims are closely intertwined with the arbitration agreements, such

12   that applying the *Jiang* test would require application of equitable estoppel.

13         Although *Jiang* expressed some doubt as to whether two U.S. cases reflected the state of the law

14   in Singapore, *id.* ¶ 28, that statement was dicta because the court went on to analyze the cases in detail

15   and distinguish them on their facts, *id.* ¶¶ 28–33.  Notably, *Jiang*'s basis for distinguishing the U.S. cases

16   was simply that on the facts before it, claims were not "closely intertwined" with the arbitration

17   agreement.  *See id.* ¶ 33 ("The claims alleged by the plaintiff against the defendants bore no relationship,

18   much less were they 'so intertwined', with the [agreement]."), ¶ 42 ("As such, the present dispute was not

19   one that was so closely intertwined with the [arbitration agreement] such that the plaintiff was estopped

20   from denying the defendants arbitration.").  It explained that the U.S. cases required that "the terms of the

21   written agreement had to be relied on for claims against the third party to be made," which was not the

22   case in *Jiang*.  *Id.* ¶ 29; *see also id.* ¶ 30 (referring to "[t]he fact that the underlying contract must be

23   relied on was also decisive in the second American case . . . .").  The same is true of the Singapore

24   District Court case MouseBelt cites.  *See Parmod Kumar Verma v Unique Food Partners Pte Ltd* [2020]

25   SGCA 254, ¶ 37(c) (Dkt. 23-5) ("Therefore, it cannot be said that the Plaintiff's claim's reliance on the

26   [arbitration agreement] is such that his claim was 'intimately founded in and intertwined with' [it].").

27   Thus, applying Singapore law would not lead to a different result.

28         Completely absent from MouseBelt's opposition brief (or the declaration of its Singapore law

                                                  16

expert) is even a single authority showing that Singapore would *not* apply equitable estoppel here.  The

remainder of the Singapore cases cited by MouseBelt and its expert do not concern equitable estoppel.

Opp. at 15–16; Dkt. 23 ¶¶ 37–39, 41–43, 45.  To the extent the Court concludes that Singapore law

applies, Defendants suggest that supplemental briefing on its contours is appropriate and request leave to

provide it.  *See* Restatement (Third) of Conflict of Laws § 5.07(c); *see also id.* § 5.06, cmt. g.

### 4. MouseBelt's attempts to distinguish Defendants' cases fail.

Finally, MouseBelt attempts to distinguish the cases Defendants relied upon, claiming that

regardless of their actual language, they involved a relationship between the nonsignatory defendant and

a signatory to the arbitration agreement.  Opp. at 16–17.  The same is of course true here.  *See supra* at

Section I.B.2.b above.  But those cases do not suggest that such a relationship was a precondition to

applying equitable estoppel.  Furthermore, any relationship in those cases was far more attenuated than

what MouseBelt now claims is necessary—a relationship that would make application of equitable

estoppel foreseeable, and that was not part of an alleged course of misconduct.  *See* Opp. at 12:1–7.

*Franklin* involved a suit by a nurse, who had signed two contracts with arbitration clauses with a

staffing agency, against a hospital where she worked.  998 F.3d at 869.  The court took care to note that

"[t]he Hospital is not a signatory to either [of the contracts with arbitration clauses], and there is no

contract between [the nurse] and the Hospital.  There is also no contract between the Hospital and [the

staffing agency]."  *Id.*  Instead, the hospital contracted with a managed service provider, which in turn

contracted with the staffing agency.  *Id.*  As such, there was no direct relationship between the hospital

and the staffing agency, let alone the close one MouseBelt contends would be necessary.  Yet *Franklin*

applied equitable estoppel anyway, reasoning that "the question is whether [the nurse's] claims against

the Hospital are 'intimately founded in and intertwined with' her employment contract with [the staffing

agency]."  *Id.* at 871.  The same is true of the other cases MouseBelt unsuccessfully attempts to

distinguish.  *See Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *2 (N.D.

Cal. Feb. 13, 2013) (relationship between nonsignatory defendant and signatory who founded it was part

of course of alleged misconduct); *Uptown Drug*, 962 F. Supp. 2d at 1183 (identity of defendants was not

foreseeable at the time the arbitration agreement was signed because their relationship with a signatory

began almost a decade after agreement was signed); *Molecular Analytical Sys. v. Ciphergen Biosystems,*

*Inc.*, 111 Cal. Rptr. 3d 876, 883, 894–95 (Cal. Ct. App. 2010) (contrary to MouseBelt's claims, agreement was never assigned to defendant because plaintiff failed to consent, and putative assignment was part of alleged misconduct); *Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 44 Cal. Rptr. 3d 817, 821 n.6 (Cal. Ct. App. 2006), *as modified* (July 20, 2006) ("The mechanics of the subcontract's incorporation clause . . . preclude a finding that [the plaintiff] *contracted* with [the nonsignatory corporation] to arbitrate."); *Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 447 (Cal. Ct. App. 2005) ("Moreover, the federal decisional authority is not limited, as plaintiff suggests, to cases in which a contract with a subsidiary corporation is relied upon to compel arbitration with a parent entity."); *Metalclad*, 109 Cal. App. 4th at 1709–10, 1717 (nonsignatory's control of signatory portfolio company was part of course of alleged misconduct); *Beitler & Assocs., Inc. v. Way Off Broadway, LLC*, No. B202735, 2008 WL 4228364, at *6 (Cal. Ct. App. Sept. 17, 2008) (concededly no relationship and finding plaintiff's reservation of its own right to compel arbitration relevant only to conclusion that "plaintiff cannot claim it was misled as to the existence of its arbitration clause . . . or of the possibility that its claims were covered by the arbitration clause").

## C.  Defendants Did Not Waive Their Right to Compel Arbitration

MouseBelt's opposition makes a last-ditch attempt to avoid arbitration by arguing waiver.  This argument fails.  "An allegation of waiver must be resolved in light of the FAA's preference for arbitration, and the party alleging waiver of arbitration bears 'a heavy burden of proof' to show waiver." *Tectura Corp. v. LaBudde Grp., Inc.*, No. C 08-5752 SBA, 2009 WL 4723340, at *3 (N.D. Cal. Dec. 4, 2009) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) and *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)).  MouseBelt fails to meet its "heavy burden" because Defendants removed to this Court and filed the present motion promptly after MouseBelt produced the Agreements, thereby establishing Defendants' ability to compel arbitration. Although MouseBelt relied extensively on the Agreements in its complaint, Dkt. 11 at 4–6, there is no dispute that it did not attach them to either of its complaints and did not produce them until nine months into the case, at which point Defendants promptly removed.  Dkt. 11-1 ¶ 7.

Ninth Circuit cases are unequivocal that there can be no finding of waiver in the absence of an ability to exercise that right, which MouseBelt ensured Defendants lacked.  *See Martin v. Yasuda*, 829

F.3d 1118, 1124, 1127 n.5 (9th Cir. 2016) (requiring "knowledge of an existing right to compel arbitration" to find waiver and noting that the Ninth Circuit had "granted motions to compel filed after substantial litigation [where there was an] absence of knowledge"); *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 942 (9th Cir. 2019) (noting that defendant could have filed a renewed motion earlier); *Britton v. Co-Op Banking Grp.*, 916 F.2d 1405 (9th Cir. 1990) (no waiver after litigating for two years where party moving for arbitration lacked knowledge of rights until six months prior); *Glob. Sec. & Commc'ns, Inc. v. AT&T*, 191 F.3d 460 (9th Cir. 1999).

MouseBelt's sole response is that Patrick Joyce had the Agreements by virtue of his former role as CEO of Knowledgr, and his knowledge should be imputed to his subsequent employer, ResearchHub, and then somehow also to the other Defendants.  Opp. at 19–20.  But the Agreements themselves define "the terms and conditions of this Agreement" as "Confidential Information," and they prohibit their disclosure subject to limited exceptions inapplicable to Joyce.  Dkt. 8-2 § 16; Dkt. 8-3 § 16.  It is black letter law that confidential information learned by an agent (here, Joyce) is not attributable to his or her principal (here, ResearchHub).  Restatement (Third) Of Agency § 5.03 (2002) ("Notice is not so imputed if the agent . . . is subject to a duty not to disclose the fact to the principal."); *see also id.* cmt. c; *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 n.1 (9th Cir. 1976) (a court should not "automatically impute to a corporate employer information communicated in confidence to an employee").  There is certainly no basis to conclude that Armstrong or the Coinbase Defendants, who are even further removed from Joyce, had the Agreements, particularly where the record establishes (and MouseBelt offers no evidence to contradict) that they did not obtain them, and therefore could not exercise their right to compel arbitration, until just before they removed the case to federal court.

MouseBelt is reduced to arguing that "Defendants implicitly admitted that at least ResearchHub had the agreements all along" because their response to an inquiry from MouseBelt did not expressly disclaim ResearchHub's knowledge.  Opp. at 20.  In fact, MouseBelt simply did not ask about ResearchHub; MouseBelt's counsel's inquiry (which MouseBelt tellingly does not excerpt) was, "is it your position that Patrick Joyce (employed by ResearchHub) and Brian Armstrong do not already have them [the Agreements]?"  Dkt. 20-1 at 1.  That MouseBelt is forced to mischaracterize Defendants' response to the question it posed as an admission that ResearchHub was aware of the Agreements

highlights how far MouseBelt is from being able to satisfy its "heavy burden" to show waiver.

In any event, the Ninth Circuit has held that "contract-based challenges" to arbitration, such as waiver, "are governed by applicable state law," not the federal standard MouseBelt applies.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121, 1124–25 & n.7 (9th Cir. 2008); *Biernacki v. Serv. Corp. Int'l*, 533 F. App'x 741, 742 (9th Cir. 2013).  In *Sovak v. Chugai Pharmaceutical Co.*, the only precedential case Defendants are aware of that can be read to suggest otherwise, the court applied federal law rather than Illinois law, evidently based on the view that "'an allegation of waiver' must be resolved in light of the FAA's preference for arbitration," a motivation that does not apply here given that California law is *more* favorable to arbitration.  280 F.3d 1266, 1270 (9th Cir. 2002); *see also Arthur Andersen*, 556 U.S. at 631 n.5.  *Sovak*'s rule is also irreconcilable with *Arthur Andersen*, which held that "[s]tate law . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," one example of which is waiver.  *Id.* at 630–31 (cleaned up).[1]

Under California law, waiver does not result from merely filing demurrers, as Defendants did here.  *See, e.g.*, *Groom v. Health Net*, 98 Cal. Rptr. 2d 836, 841 (Cal. Ct. App. 2000) (finding no waiver where defendant merely demurred twice even though it waited almost a year to move to compel arbitration).  Furthermore, California requires a showing of prejudice to find waiver, which MouseBelt has even not attempted to make, but instead has sought to escape by relying improperly on federal law. *See Hoover v. Am. Income Life Ins. Co.*, 142 Cal. Rptr. 3d 312, 321 (Cal. Ct. App. 2012) ("The presence or absence of prejudice from the litigation is a determinative issue.").

## II.   CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration should be granted.

---

[1] *Newirth*, while noting the apparent conflict, applied federal law because "[t]he parties d[id] not dispute that the federal standard applies here."  931 F.3d at 940.  And although a recent non-precedential Ninth Circuit order attempted to distinguish *Cox* on the basis that it involved a choice-of-law clause, *Alvarez v. Sheraton Operating Corp.*, No. 21-55562, 2022 WL 67339, at *1 (9th Cir. Jan. 6, 2022), that cannot be the point of distinction since *Sovak* also involved a state choice-of-law clause, *Sovak*, 280 F.3d at 1269–70, and *Cox* did not state that its conclusion *that* state law applied (as opposed to *which* state law applied) depended on the choice-of-law clause, *Cox*, 533 F.3d at 1121, 1124–25.  *Alvarez* applied federal law because "the parties agreed that their arbitration agreement 'shall be governed by the Federal Arbitration Act,'" making its statement about *Cox* dicta in any case.  2022 WL 67339, at *1.  *Morgan v. Sundance, Inc.*, expressly left the question of what law should apply unanswered.  142 S. Ct. 1708, 1712 (2022).

1    Dated:  September 27, 2022                    DURIE TANGRI LLP

2

3                                                 By: */s/ Raghav R. Krishnapriyan*
                                                      RAGHAV R. KRISHNAPRIYAN
4
                                                  Attorneys for Defendant
5                                                 RESEARCHHUB TECHNOLOGIES, INC.

6

7    Dated:  September 27, 2022                    CONRAD | METLITZKY | KANE LLP

8

9                                                 By: */s/ Mark Conrad*
                                                      MARK CONRAD
10
                                                  Attorneys for Defendants
11                                                COINBASE, INC. and COINBASE ASSET
                                                  MANAGEMENT, INC. d/b/a COINBASE VENTURES
12

13

14   Dated:  September 27, 2022                    MUNGER, TOLLES & OLSON LLP

15

16                                                By: */s/ Miriam Kim*
                                                      MIRIAM KIM
17
                                                  Attorneys for Defendant
18                                                BRIAN ARMSTRONG

19

20

21

22

23

24

25

26

27

28

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Raghav R. Krishnapriyan, attest that concurrence in the filing of this document has been obtained.

Dated:  September 27, 2022

_/s/ Raghav R. Krishnapriyan_
RAGHAV R. KRISHNAPRIYAN

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION / CASE NO. 4:22-CV-04847-JST

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Raghav R. Krishnapriyan*
RAGHAV R. KRISHNAPRIYAN

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION / CASE NO. 4:22-CV-04847-JST