CONSTANCE J. YU (SBN 182704)
E-mail: cyu@plylaw.com
DONALD J. PUTTERMAN (SBN 90822)
E-mail: dputterman@plylaw.com
GEORGE CHIKOVANI (SBN 254437)
E-mail: gchikovani@plylaw.com
ELLEN P. LIU (SBN 280459)
E-mail: eliu@plylaw.com
PUTTERMAN | YU | WANG LLP
345 California Street, Suite 1160
San Francisco CA 94104-2626
Tel: (415) 839-8779
Fax: (415) 737-1363

Attorneys for Plaintiff
MOUSEBELT LABS PTE. LTD

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**CITY AND COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| MOUSEBELT LABS PTE. LTD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BRIAN ARMSTRONG, RESEARCHHUB TECHNOLOGIES, INC., RESEARCHHUB, LLC, COINBASE, INC., COINBASE ASSET MANAGEMENT, INC., d/b/a COINBASE VENTURES, and DOES 1-25, inclusive,<br><br>　　　　　Defendants. | Case No.  4:22-cv-04847-JST<br><br>**PLAINTIFF MOUSEBELT LABS PTE. LTD'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**<br><br>Judge: Honorable Jon S. Tigar<br><br>Complaint Filed: December 17, 2021 |

Pursuant to the Court's December 15 Order (Dkt. No. 31), Plaintiff MouseBelt submits this supplemental brief addressing *Oasis Medical, Inc. v. Biocia, Inc.*, No. CV-218879-DMGAGRX, 2022 WL 2189616 (C.D. Cal. Jan. 10, 2022) ("*Oasis*") and *Jarboe v. Hanlees Auto Grp.*, 53 Cal. App. 5th 539 (2020), and related authorities.

## I. *OASIS* CONFIRMS THAT COURTS IN THE NINTH CIRCUIT CONTINUE TO APPLY THE *MUNDI/SOKOL* "CLOSE RELATIONSHIP" REQUIREMENT

*Oasis* follows the Ninth Circuit's test from *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009), and the cases following *Mundi*, requiring a "close connection" between the signatory and nonsignatory, based on *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008).

Defendants' Reply argued that Plaintiff "mischaracterized" *Mundi* by suggesting that it endorsed the Second Circuit's test in *Sokol*. Not so, as reflected in *Mundi*'s language itself (which described *Sokol* as involving "a situation similar to ours" and thereafter approvingly quoting the decision at length), and the bevy of Ninth Circuit district court decisions construing *Mundi* as adopting *Sokol*. MouseBelt's Opposition cited several such cases;[1] yet, Defendants' Reply failed to address any of them and instead attempted to dismiss them by stating without support: "MouseBelt relies on a series of non-binding district court decisions, all of which long predate the applicable Ninth Circuit and Supreme Court caselaw." (Reply at 12:21-22.) While it is unclear to which "applicable Ninth Circuit and Supreme Court caselaw" Defendants refer, no controlling authority denies the continued applicability of the *Mundi/Sokol* test. Moreover, district court decisions continue to apply it—including the January 2022 *Oasis* case, post-dating both *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) and *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, – U.S. –, 140 S. Ct. 1637 (2020). *Oasis* relied on *Mundi* as the applicable Ninth Circuit standard, including specifically its incorporation of *Sokol*'s requirement that "[i]n addition to the requirement that the factual issues be intertwined, the court required 'a relationship among the

---

[1] Opp. at 10-11 citing *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011 WL 3809908 (N.D. Cal. Aug. 29, 2011) (Wilken, J.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011) (Illston, J.); *In re Apple & TM Antitrust Litigation*, 826 F.Supp.2d 1168, 1178-1179 (N.D. Cal. 2011) (Ware, J.); *Nav N Go KFT v. Mio Technology USA Ltd.*, 2009 WL 10693414 (D. Nev. 2009).

parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" 2022 WL 2189616 at *8. *Oasis* also cited *Ross v. Am. Express Co.,* 547 F.3d 137, 143 (2d Cir. 2008), a subsequent Second Circuit decision interpreting *Sokol*, as authority regarding the nature of the required relationship. *Id.*

    *Oasis* denied the nonsignatory parties' motion to compel after finding that the moving parties did not prove the requisite relationship, because of adversity of the non-signatories to both signatories (not because of a lack of "corporate relationships"). *Oasis* at *8-9. Thus, *Oasis'* key takeaway is not the particular relationships listed in *Oasis*; it is the principle that a non-signatory seeking to enforce an arbitration clause *must* demonstrate a "close" or "integral" relationship with a party or parties to the contract that makes equitable their invocation of arbitration.

    *Oasis* is consistent with many more Ninth Circuit district court decisions adopting the *Mundi/Sokol* "close relationship" test.[2] Although some district court cases have not addressed the relationship element, we are aware of no case refusing to apply the *Mundi* test on the ground it is not good law. In fact, *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013), identified by Defendants at the hearing as their best authority, cites *Mundi* as controlling authority. For unknown reasons, perhaps specific to that case, *Torbit* did not discuss the relationship element of *Mundi*; nevertheless, Judge Davila did not hold that *Mundi* was *not* controlling on the relationship test. *Torbit* is also distinguishable because the nonsignatory company was founded by the ex-employee who signed the arbitration agreement in his personal capacity (*id.* at *2); by contrast, while ResearchHub now identifies Joyce as a "co-founder," ResearchHub was Armstrong's idea and Armstrong recruited Joyce to it (*see* FAC ¶ 56).

---

[2] In addition to fn. 1, *see Valentino S.p.A. v. Mario Valentino S.p.A.*, No. LACV-1906306-JAKSSX, 2021 WL 6882327, at *9 (C.D. Cal. Apr. 9, 2021); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 955 (N.D. Cal. 2012) (Illston, J.); *Briones v. Fitness Int'l, LLC*, No. SACV-1644-JLSKESX, 2016 WL 10957953, at *2 (C.D. Cal. Aug. 5, 2016); *T-Mobile USA, Inc. v. Montijo*, No. C12-1317RSM, 2012 WL 6194204, at *2 (W.D. Wash. Dec. 11, 2012); *Simpson v. Pulte Home Corp.*, No. C 11-5376 SBA, 2012 WL 1604840, at *6 (N.D. Cal. May 7, 2012) (Brown Armstrong, J.); *Smith v. Massachusetts Mut. Life Ins. Co.*, No. CV-0906765-MMMSSX, 2010 WL 11545610, at *9 (C.D. Cal. May 25, 2010).

## II. CALIFORNIA LAW LIKEWISE REQUIRES AN "INTEGRAL RELATIONSHIP"

*Oasis* also emphasized that under California law, the equitable estoppel "rule requires an 'integral relationship' between the party with whom the plaintiff agreed to arbitrate and the non-signatory seeking to invoke arbitration." 2022 WL 2189616 at *8 (citing *Jarboe,* 53 Cal. App. 5th at 553-554). The "integral relationship" element in California did not originate with *Oasis* or *Jarboe*. *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705 (2003), heavily relied upon by Defendants, found an integral relationship between the signatories and nonsignatory: "The nexus here between Metalclad's claims against Ventana and the underlying contract with Geologic, *as well as the integral relationship between the Geologic and Ventana,* persuade us equitable estoppel should apply." *Id.* at 1717 (emphasis added). *Jarboe*, in turn, unequivocally confirmed that the "integral relationship" is a necessary element for equitable estoppel under California law—reversing a trial court order granting a nonsignatory's motion to compel arbitration, because the moving party failed to show such a relationship. *Jarboe*, 53 Cal. App. 5th at 552-53 (distinguishing the results in *Metalclad*, *Boucher*, and *Garcia* because unlike in *Jarboe*, "the *integral* nature of the relationships between the parties in *Metalclad, Boucher,* and *Garcia* was demonstrated by evidence in the record in each of those cases.") (emphasis in original). The court held:

> In contrast to the proven close relationships between the signatories and the nonsignatories in *Metalclad, Boucher,* and *Garcia,* the precise nature of the relationship between Hanlees and its affiliated dealerships is unproven in this record… it is unclear what that relationship may be and it has not been shown to be *integral* to support the application for equitable estoppel.

*Id.* at 554.

Significantly, the Witkin treatise recognizes the "integral relationship" language as a key element of the California law test. *See* Witkin, California Procedure, 6th PWT § 619 (2022) (quoting "integral relationship" language in describing holdings of *Metalclad* and *Jarboe*). The Ninth Circuit's *Franklin* decision also recognized *Jarboe* as reflecting California law. *See* 998 F.3d at 871-72.[3]

---

[3] *Franklin* (which is not a New York Convention case) itself emphasized the relationship factor while distinguishing *Mundi*, *Kramer*, and *Murphy* (each of which found equitable estoppel inapplicable) by noting that "[n]one of our previous cases have involved staffing agencies, and the *relationship between employees (like nurses), staffing agencies, and clients (like hospitals)* bears little resemblance to the relationship between consumers and participants in the supply chain (like manufacturers)." *Id.* at 874 (emphasis added).

## III. DEFENDANTS HAVE NOT CARRIED THEIR BURDEN OF SHOWING THE REQUISITE CLOSE RELATIONSHIP

Defendants have not, and cannot, meet their burden of proof to show a "close" or "integral" relationship to the MouseBelt-Knowledgr relationship required for equitable estoppel. While the scope of relationships that can satisfy this requirement is not limited to formal corporate relationships, Defendants do not fall into any of the categories cited by relevant decisions. As Judge Ware recognized in *In re Apple*, the focus of the *Sokol* test is fairness (826 F.Supp.2d at 1178-79), and emphasizes foreseeability to the signatory party that it may have to arbitrate with the nonsignatory. *Sokol*, 542 F.3d at 361;[4] *see, e.g., Ross, supra,* 547 F.3d at 145 (cited in *Oasis*). The Second Circuit recently affirmed the continuing validity of this framework. *See Doe v. Trump Corporation*, 6 F.4th 400, 412-13 (2d Cir. 2021); *see In re Apple*, 826 F.Supp.2d at 1179 (noting relevance of subsequent Second Circuit decisions to interpreting *Mundi/Sokol* test).

Importantly, *Oasis* rejected the *same* argument Defendants made at the hearing, *i.e.,* that ResearchHub satisfies the "close relationship" standard because Patrick Joyce, who was the founder and CEO of Knowledgr, is now the COO of ResearchHub. *Oasis* specifically rejected an attempt by the individual nonsignatory defendant Hofmann to compel arbitration based on his role as the co-founder of the signatory entity Biocia: "[W]hile he certainly has an integral relationship with Biocia in many respects, his conduct alleged in this lawsuit is outside the scope of that relationship … Because Hofmann's and Biocia's interests are not aligned but are at odds, fairness does not dictate that he be allowed to invoke the arbitration clause that Biocia signed." 2022 WL 2189616 at *9. MouseBelt alleges that Joyce's actions were contrary to Knowledgr's interests (FAC ¶¶ 82-89), making it inequitable to allow ResearchHub or any other Defendant to invoke *Knowledgr's* arbitration clause. Judge Gee noted that Oasis had also separately sued Biocia, so that Oasis was not "selectively choosing to sue I-Med instead of Biocia to dodge its arbitration agreement with Biocia." *Id.* at *8. MouseBelt has not sued or initiated arbitration against Knowledgr, but this was not a tactical ploy; the FAC alleges that the now-defunct Knowledgr itself, like MouseBelt, was a *victim* of Defendants, and not itself a bad actor. *E.g.*, FAC ¶¶107-119; Opp. at 12:22-13:11.

Defendants' argument that Armstrong's investment in Knowledgr creates the requisite relationship fares no better. First, even if Armstrong had been a bona fide investor in Knowledgr, Armstrong's investment occurred in mid-July, 2019, well after the second Accelerator/SAFE agreement, executed on May 28, 2019 (FAC ¶ 71). Even if that investment had been foreseeable, it would not create a relationship sufficient to invoke equitable estoppel to compel arbitration, especially where, as here, the Agreements expressly preclude any third-party right to enforce the Agreements. *See* Opp. at 12. Second, MouseBelt alleges in detail that Armstrong's purported interest and subsequent token investment in Knowledgr was only a ploy, to get his foot in the door and obtain a detailed look at exactly how Knowledgr was being built and whether it would serve his purposes for creating ResearchHub. *See, e.g.,* FAC, ¶¶ 7, 68, 72.[4]

Finally, Defendants' argument in their Reply that MouseBelt purportedly alleged a close relationship with Armstrong in opposing Defendants' first demurrer, resulting in judicial estoppel, simply mischaracterizes MouseBelt's argument that it was foreseeable *to Armstrong* that his actions would harm MouseBelt. (*See* Dkt. 1-43 at 15-17). The relevant question for the equitable estoppel analysis is whether it was foreseeable *to MouseBelt* that it would have to arbitrate a dispute with Armstrong and the other Defendants. As described in the Opposition, under the *Mundi/Sokol* standard, a party whose sole alleged relationship to the signatories is that of a third-party wrongdoer may not invoke equitable estoppel to enforce the arbitration clause between those signatories. Opp. at 13:12-26. To do so would be the opposite of "equitable" estoppel.

Dated: December 22, 2022                    PUTTERMAN | YU | WANG LLP


                                            By: */s/ George Chikovani*
                                                GEORGE CHIKOVANI
                                            Attorneys for Plaintiff
                                            MOUSEBELT LABS PTE. LTD

---

[4] Defendants concede that for the purposes of this motion they must assume the truth of the allegations in the FAC. *See* Mot. at 2, fn. 2. They have submitted no evidence purporting to dispute the allegations.