MARK CONRAD (CA Bar No. 255667)
FELIPE CORREDOR (CA Bar No. 295692)
**CONRAD | METLITZKY | KANE LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: mconrad@conmetkane.com
Email: fcorredor@conmetkane.com

Attorneys for Defendants Coinbase, Inc.,
and Coinbase Asset Management, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOUSEBELT LABS PTE. LTD.,<br><br>                   Plaintiff,<br><br>     v.<br><br>BRIAN ARMSTRONG, RESEARCHHUB TECHNOLOGIES, INC., RESEARCHHUB, LLC, COINBASE, INC., COINBASE ASSET MANAGEMENT, INC., d/b/a COINBASE VENTURES, and DOES 1-25, inclusive,<br><br>                   Defendants. | Case No. 3:22-cv-04847-JST<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION** |

## I. *JARBOE* AND *OASIS* APPLY CALIFORNIA LAW, NOT FEDERAL COMMON LAW

MouseBelt argues that federal common law, not California law, governs the application of equitable estoppel here. If so, *Jarboe* and *Oasis* are inapplicable because they analyze equitable estoppel under California law. In *Jarboe*, the California Court of Appeal applied state law and denied a motion to compel arbitration based on its conclusion that the plaintiff's claims were not "founded on the underlying contract[]." *Jarboe v. Hanlees Auto Grp.*, 53 Cal. App. 5th 539, 552-55 (2020). The federal district court in *Oasis* expressly stated that, although "[f]ederal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements," courts "apply ordinary state law contract principles" when deciding "whether the parties agreed to arbitrate a certain matter," and relied principally on California law (though citing to federal cases too) in denying the motion. *Oasis Medical, Inc. v. Biocia Inc.*, 2022 WL 2189616, at *7-9 (C.D. Cal. Jan. 10, 2022).

MouseBelt characterizes *Oasis* as applying the "Ninth Circuit standard" supposedly established by *Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042 (9th Cir. 2009). But this mischaracterizes *Oasis*, which mentions *Mundi* only in passing (with a *see also* citation) and only to describe an out-of-circuit case, and otherwise relies on *California* authorities (and another out-of-circuit case) to support its holding. 2022 WL 2189616, at *8-9 (citing *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705 (2003), and *Jarboe*, 53 Cal. App. 5th at 555). Thus, if the Court applies federal common law in this case, *see* Dkt. 34 at 18:8-15, neither *Jarboe* nor *Oasis* will have any bearing on the relevant legal standard or whether arbitration should be compelled.

## II. FEDERAL COMMON LAW DOES NOT FOLLOW THE NON-EXISTENT *MUNDI*/*SOKOL* "TEST" AND DOES NOT REQUIRE A SPECIAL "RELATIONSHIP"

MouseBelt refers repeatedly to a so-called *Mundi*/*Sokol* "test" or "standard." Dkt. 32 at 2-3 & 5-6. MouseBelt seeks to conflate these cases because the Second Circuit's *Sokol* case is the source of the "foreseeable" relationship requirement that MouseBelt seeks to graft onto the equitable estoppel standard (even though neither *Jarboe* nor *Oasis* did so). But no such "*Mundi*/*Sokol*" test exists. *Mundi* merely described *Sokol* without endorsing it, just as it described two Fourth Circuit cases that did not require any relationship. 555 F.3d at 1046-47. *Mundi*'s own analysis was limited to whether the plaintiff's claims were founded upon the contract or its conduct was intertwined with that of a signatory. 555 F.3d at 1047.

That is the test in the Ninth Circuit and other federal courts, which have never held that a relationship is required, let alone a specific type. "[F]ederal equitable estoppel principles" teach that, as under California law, there are "two circumstances" in which a nonsignatory may compel a signatory's claims to arbitration: (1) "where the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory" and (2) "where the signatory 'raises allegations of' collusive misconduct between the nonsignatory and other signatories to the contract." *Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *7 (11th Cir. July 8, 2022) (Tjoflat, J., concurring) (internal citations and quotation marks omitted); *accord Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 869, 876 (9th Cir. 2021) (applying equitable estoppel despite the absence of *any* direct relationship between the defendant and a signatory).

### III. CALIFORNIA LAW DOES NOT REQUIRE A SPECIAL RELATIONSHIP AMONG THE PARTIES TO APPLY EQUITABLE ESTOPPEL

California law likewise does not require any particular relationship between the parties to apply equitable estoppel. Instead, it looks to whether "the causes of action against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations," and "[t]he doctrine applies where the claims are 'based on the same facts and are inherently inseparable' from the arbitrable claims against signatory defendants." *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017) (quoting *Metalclad*, 109 Cal. App. 4th at 1713-14). California law's emphasis on the close relationship between the *claims* and the *contract* (but not between the parties themselves) has been described as "the *sine qua non* for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 217-18 (2009) (emphasis added). Crucially, the Ninth Circuit has held that this is the test for equitable estoppel under California law (even when it has analyzed *Jarboe*), and the Ninth Circuit's characterization of California law (unlike *Oasis*'s) is binding on this court. *Franklin*, 998 F.3d at 871; *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013); *see also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000).

*Jarboe* does not hold otherwise. Consistent with the case law summarized above, *Jarboe* described the test for equitable estoppel as follows:

> Under the equitable estoppel doctrine, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." The doctrine applies where the claims are "'"based on the same facts and are inherently inseparable"' from arbitrable claims against signatory defendants." "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved."

53 Cal. App. 5th at 552 (internal citations omitted); *see also id.* at 549 (nonparty can enforce arbitration agreement when "the claims against the nonsignatory are dependent on, or inextricably intertwined with, the contractual obligations of the agreement containing the arbitration clause").

*Jarboe* did not hold that a relationship between the parties is a prerequisite to equitable estoppel. 53 Cal. App. 5th at 543. It involved a plaintiff who was hired by a car dealership, with which he signed an employment contract with an arbitration provision. *Id.* at 543-45. Shortly thereafter, he worked for a second dealership with which he signed no agreements. *Id.* at 543, 546. He then asserted wage and hour claims against twelve different dealerships that were part of the corporate group to which his two employers belonged. *Id.* at 546. Notably, "Jarboe [did] not seek[] to obtain benefits under his employment agreement with [the first dealership] against [the other defendants]." *Id.* at 555. Thus, given that (unlike MouseBelt) Jarboe did not rely on the terms of the arbitration agreement in his claims against non-signatory defendants, his claims could only be "dependent on, or inextricably intertwined with" the agreement if the other dealerships had an "integral relation" to his first employer. *Id.* at 554. *That* was why the court looked to the relationship between the defendants—and, finding an absence of "evidence showing the relationship among the separate corporate entities or how they operated with respect to each other's employees," it declined to compel arbitration. *Id.* Stated differently, *Jarboe* analyzed the relationship between the parties to ascertain *whether the plaintiffs' claims were intertwined with the agreement*. The same is true in the cases *Jarboe* relied on. *See Metalclad*, 109 Cal. App. 4th at 1717 (noting the "integral relationship . . . leads us to the conclusion that the claims are 'intimately founded in and intertwined with' the license agreement"); *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 272 (2005) (same); *Garcia*, 11 Cal. App. 5th at 788 (not requiring relationship at all apart from plaintiff's "attempt to link [non-signatory] to [signatory] to hold it liable for alleged wage and hour claims"). *Jarboe* emphasized that in each of these cases, as here, "it was equitable to compel the signatories into

arbitration against nonsignatories because each of the signatories raised claims that were founded on the underlying contracts; the signatories sought to enforce a benefit under the nonsignatories while seeking to avoid arbitration." *Jarboe*, 53 Cal. App. 5th at 555. Here, however, MouseBelt has never disputed that its claims are "intimately founded in and intertwined with" the SAFE agreements.

Like MouseBelt, *Oasis* takes *Jarboe*'s statements about an "integral relationship" far out of context in suggesting that such a relationship is required for equitable estoppel to apply. 2022 WL 2189616, at *8. As other cases that have cited *Jarboe* demonstrate, that is not an accurate statement of the law. Indeed, *Franklin* applied equitable estoppel despite the absence of any direct relationship between any signatory and any non-signatory, because the plaintiff there relied on her employment agreement to assert claims against a third-party staffing agency. 998 F.3d at 869. MouseBelt's supplemental brief simply overlooks these authorities[1] and then puzzles over *Torbit, Inc. v. Datanyze, Inc.*, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013), which likewise does not require a relationship between the parties to apply equitable estoppel. Dkt. 32 at 3. MouseBelt's confusion is easily explained: Under California law, if claims are inextricably intertwined with a contract, nothing else is required for equitable estoppel to apply, regardless of the signatory's relationship with the non-signatory.

### IV.   UNDER ANY FORMULATION OF THE LEGAL STANDARD, MOUSEBELT'S ALLEGATIONS ESTABLISH A RELATIONSHIP BETWEEN DEFENDANTS AND KNOWLEDGR SUFFICIENT TO APPLY EQUITABLE ESTOPPEL

While Defendants contend that a non-signatory need not have *any* relationship with a signatory to compel arbitration, a sufficient relationship actually exists and has been alleged in this case. Thus, to the extent the Court views applicable law as requiring some degree of connection between the defendants and the contracting parties, that requirement is more than met here, whether the necessary relationship is described as "integral," *Jarboe*, 53 Cal. App. 5th at 553, or otherwise "of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped," *Mundi*, 555 F.3d at 1046. Indeed, numerous courts, including this Court, have applied equitable estoppel to compel arbitration in cases involving far less substantial relationships than the ones MouseBelt alleges existed between Defendants and the signatories to the contracts on which MouseBelt's claims rely. *See, e.g.*,

---

[1] Other than *Oasis*, MouseBelt cites only to cases pre-dating *Franklin* (and, with two out-of-district exceptions, *Kramer*). Dkt. 32 at 2 n.1, 3 n.2.

*Franklin*, 998 F.3d at 869, 876 (no direct relationship between signatories and non-signatories); *Ma v. Golden State Renaissance Ventures, LLC*, 2021 WL 2190912, at *9 (N.D. Cal. May 31, 2021) (investors); *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1183-86 (N.D. Cal. 2013) (competitors and commercial contractors); *Torbit*, 2013 WL 572613, at *4 (competitors and employer-employee); *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) (consumers and commercial contractors); *Metalclad*, 109 Cal. App. 4th at 1716-19 (competitors and investors).

The relationship between Defendants and the contracting parties here is far closer than in the above cases, and the Northern District in *In re Apple* expressly rejected the notion (advanced by MouseBelt here) that a "close," corporate relationship was necessary to apply equitable estoppel. 826 F. Supp. 2d at 1178-79 (holding that a business relationship between the signatory (wireless carrier ATTM) and the non-signatory (phone manufacturer Apple) was sufficient to apply equitable estoppel and compel arbitration of consumer plaintiffs' claims).

In opposing arbitration here, *see* Dkt. 32 at 5, MouseBelt simply ignores its own allegations about the relationships between Defendants, Joyce, and Knowledgr, all of which reflect a closer relationship than the arms-length commercial contract between ATTM and Apple held to be sufficient in *In re Apple*. Notably, MouseBelt ignores that Armstrong (and, as alleged by MouseBelt, the co-defendants) was a venture-stage investor in Knowledgr—just like MouseBelt itself. *See, e.g.*, FAC ¶¶ 13, 15, 42, 43, 44, 72, 79, 85, 95. MouseBelt also ignores its own allegations that it was aware of Armstrong as a potential investor by May 2019, *id.* ¶ 44, as it entered into a second investment agreement on May 28, 2019, Dkt. 8-3 at 23—allegations that would satisfy even the purported requirement of a "foreseeable" relationship that MouseBelt attempts to import from Second Circuit law. MouseBelt seeks to avoid the implications of its own allegations by pretending that Joyce can be viewed as entirely separate from Knowledgr, despite the fact that Joyce himself signed the agreements on Knowledgr's behalf, and before leaving Knowledgr and joining ResearchHub. This is not a proper basis for distinction, *see Torbit*, 2013 WL 572613, at *4, and MouseBelt cites no authority for its position.

In sum, MouseBelt's allegations establish a sufficient nexus between the agreements and its claims, as well as a sufficient relationship between Defendants and Joyce/Knowledgr, to justify applying equitable estoppel under either California or federal common law.

| | |
|---|---|
| Dated: January 5, 2023 | MUNGER TOLLES & OLSON LLP |
| | By: /s/ *Miriam Kim* |
| |   MIRIAM KIM |
| | Attorneys for Defendant<br>BRIAN ARMSTRONG |
| Dated: January 5, 2023 | MORRISON & FOERSTER LLP |
| | By: /s/ *Eugene Novikov* |
| |   EUGENE NOVIKOV |
| | Attorneys for Defendant<br>RESEARCHHUB TECHNOLOGIES, INC. |
| Dated: January 5, 2023 | CONRAD \| METLITZKY \| KANE LLP |
| | By: /s/ *Mark R. Conrad* |
| |   MARK R. CONRAD |
| | Attorneys for Defendants<br>COINBASE, INC. and COINBASE ASSET MANAGEMENT, INC. |

## ATTESTATION

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of this document.

                /s/ *Mark R. Conrad*
                MARK R. CONRAD

6

CASE NO. 3:22-cv-04847-JST             DEFS' SUPP. BR. ISO MOT. TO COMPEL ARBITRATION