CONSTANCE J. YU (SBN 182704)
E-mail: cyu@plylaw.com
DONALD J. PUTTERMAN (SBN 90822)
E-mail: dputterman@plylaw.com
GEORGE CHIKOVANI (SBN 254437)
E-mail: gchikovani@plylaw.com
ELLEN P. LIU (SBN 280459)
E-mail: eliu@plylaw.com
PUTTERMAN | YU | WANG LLP
345 California Street, Suite 1160
San Francisco CA 94104-2626
Tel: (415) 839-8779
Fax: (415) 737-1363

Attorneys for Plaintiff
MOUSEBELT LABS PTE. LTD

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| MOUSEBELT LABS PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ARMSTRONG, RESEARCHHUB TECHNOLOGIES, INC., RESEARCHHUB, LLC, COINBASE, INC., COINBASE ASSET MANAGEMENT, INC., d/b/a COINBASE VENTURES, and DOES 1-25, inclusive, <br><br> Defendants. | Case No. 4:22-cv-04847-JST <br><br> **PLAINTIFF MOUSEBELT LABS PTE. LTD'S ADMINISTRATIVE MOTION REQUESTING HEARING ON POSSIBLE BREACH OF DUTY OF CANDOR BY DEFENDANTS' COUNSEL** <br><br> *Local Rule 7-11* <br><br> Judge: Honorable Jon S. Tigar <br><br> Complaint Filed: December 17, 2021 <br> Notice of Removal Filed: August 24, 2022 |

Pursuant to Local Rule 7-11, Plaintiff MouseBelt Labs PTE, Ltd. ("MouseBelt") files this administrative motion requesting the Court set a hearing or conference regarding a possible breach of the duty of candor by counsel for Defendants Brian Armstrong ("Armstrong"), ResearchHub Technologies, Inc. ("ResearchHub"), and Coinbase, Inc. ("Coinbase") (collectively, "Defendants") regarding each Defendant's knowledge of the existence of an arbitration clause in the SAFE Agreements between MouseBelt and Knowledgr, prior to August 10, 2020; or alternately that the Court order each of Defendants' counsel to provide sworn declarations regarding their, and their clients', prior knowledge.

## I. SUMMARY OF FACTS AND ISSUE

Defendants removed this action to this Court on August 24, 2022. In their Notice of Removal, Defendants stated that they received copies of the SAFE Agreements (the "Agreements") containing the arbitration clauses at issue on or around August 10, 2022. *See* Dkt. 1 at ¶5.

Defendants then moved to compel arbitration. Defendants' moving papers (prepared by Durie Tangri, ResearchHub's counsel) did not state when they first obtained or saw copies of the agreements or learned of their terms, but only complained in a footnote that MouseBelt had not attached the agreements to its complaint and about supposed delay in producing them. Dkt. 11 at 1, fn. 1. In addition, Coinbase's counsel, Mark Conrad of the Conrad Melitzky firm, concurrently submitted a declaration, describing his firm's requests for the Agreements commencing on June 23, 2022 (shortly after his firm substituted in to the case as Coinbase's counsel) and that MouseBelt "finally produce[d] the Agreements in response to Defendants' Requests" on August 10, 2022. Dkt. 11-1, ¶¶2-7. Mr. Conrad noted his colleague Felipe Corredor's response to a question from MouseBelt's counsel, "confirming that neither Mr. Armstrong nor Coinbase had a copy of the Agreements." *Id.* at ¶7. Defendants' moving papers included *no* declarations or affirmative statements denying that Defendants or their counsel had prior knowledge of the Agreements or arbitration terms.

MouseBelt's Opposition argued that Defendants have waived the right to arbitrate, by actively litigating the merits of the case in state court, and removing to this Court only after receiving adverse rulings on two consecutive demurrers. *See* Dkt. 20, at 18-21.

In Defendants' Reply (like Defendants' other papers, drafted by ResearchHub's counsel, the Durie Tangri firm), Defendants stated:

> MouseBelt fails to meet its "heavy burden" because Defendants removed to this Court and filed the present motion **promptly after MouseBelt produced the Agreements** . . .. Although MouseBelt relied extensively on the Agreements in its complaint . . . there is no dispute that it did not attach them to either of its complaints and did not produce them until nine months in the case, at which Defendants promptly removed.

Dkt. 26 at 18:21-26 (emphasis added).

Defendants' Reply again nowhere expressly stated whether Defendants had knowledge of the right to arbitrate prior to August 10, 2022, although attempting to so *imply* in the above statement; or why they had not previously either requested the Agreements or asked permission to get them from Patrick Joyce after seeing MouseBelt's "extensive[]" reliance in the Complaint, instead arguing only that MouseBelt had failed to carry its burden to show such knowledge. Specifically regarding ResearchHub's knowledge, Defendants argued that MouseBelt had failed to ask just the right question to elicit an answer:

> MouseBelt is reduced to arguing that "Defendants implicitly admitted that at least ResearchHub had the agreements all along" because their response to an inquiry from MouseBelt did not expressly disclaim ResearchHub's knowledge . . . In fact, MouseBelt **simply did not ask about ResearchHub**. That MouseBelt is forced to mischaracterize Defendants' response to the question is posed as an admission that ResearchHub was aware of the Agreements highlights how far MouseBelt is from being able to satisfy its "heavy burden" to show waiver."

Dkt. 26, at 19:22-20:1 (emphasis added).

Because Defendants' assertions were made in their Reply, MouseBelt did not have an opportunity to respond in writing. In addition, because Defendants in July 2022 had requested an extension of time to respond to written discovery served in the state court action, which included inquiries which would have disclosed whether Defendants had prior knowledge of the arbitration provisions, but then removed before the extended time to respond had elapsed, MouseBelt never received responses to this discovery. Dkt. 20, at 5:17-26.

At oral argument, Mr. Conrad represented as follows:

> I will only add that we did exercise diligence. We were careful, and it would have been reckless of us to have acted otherwise. . . .. There were the constraints that Your Honor mentioned on Mr. Joyce's ability to share information, and counsel

> represented him in an individual capacity to share information. . . .. And as soon as we got the agreement [sic], we removed the case and sought arbitration and this is not case about effectively prejudice. It's a case about knowing derogation—the derogation in (indiscernible) conduct with respect to known rights, and the rights simply weren't known. It would be irresponsible for me as an officer of the Court to have done anything other than what we did.

Putterman Decl. Ex. F, Transcript of December 15, 2022 hearing at 12:17-13:5

At no time did Defendants' other counsel address whether they had custody of, seen or been aware of the Agreements or the arbitration terms, or deny knowing of the arbitration provisions. Mr. Conrad's firm had only substituted into the case on June 7, 2022, but other counsel had been involved from the outset of the state court proceedings, and Durie Tangri itself had been involved in this matter for ResearchHub and knew some terms of the Agreements since at least August 2020. *See* Declaration of Donald J. Putterman in Support of MouseBelt's Administrative Motion ("Putterman Decl.") Ex. E (letter from Daralyn Durie to MouseBelt's previous counsel dated August 21, 2020, referencing her understanding that "MouseBelt provided slightly more than $300,000 in funds to Knowledgr in connection with two SAFE Agreements.")

After the December 15, 2022 argument, with the onset of holidays and vacations and while awaiting the Court's decision, MouseBelt's counsel had this matter on the back-burner. Putterman Decl. ¶2. In late January, however, after reviewing the correspondence between Durie Tangri and MouseBelt's former counsel, considering all the facts and circumstances (including the Defendants' careful language in their written papers and at oral argument, the absence of affirmative declarations denying prior knowledge by other counsel, and the statutory and case law defining counsel's duty of candor), on February 7, 2023, MouseBelt's counsel wrote to all counsel for each of the Defendants. Putterman Decl., Ex. A. The letter (copied also to Coinbase's former counsel at Goodwin Procter) stated MouseBelt's concern that Defendants and their counsel may have misled the Court regarding when Defendants first learned of the arbitration provisions, and included a detailed recitation of the facts and circumstances including those described above, all of which suggested Defendants were in fact aware of the existence of the arbitration clauses prior to August 10, 2022 (Putterman Decl., Ex. A at 2-6). The letter also emphasized that the language appearing in Defendants' Reply, as quoted and emphasized above, apparently reflected a view that unless MouseBelt (and presumably the Court)

expressly asked a very specific question, Defendants and their counsel were under no obligation to make a full disclosure concerning prior knowledge, regardless of what they were otherwise stating/implying to the Court on the same topic in writing and at oral argument.

The letter further stated that *if* Defendants in fact had such prior knowledge, withholding from the Court such highly-material information while implying that the contrary was true, doing so would violate counsel's professional duty of candor to the Court. *Id.* at 6. The letter cited to and quoted at length from Ninth Circuit, Northern District, California Supreme Court and California Courts of Appeal cases discussing counsel's duty of candor, particularly in circumstances where counsel were making representations which were misleading for omitting material information. *Id.* at 6-10.

The letter requested that by February 10, 2023, each of the Defendants' counsel answer the following direct questions, on behalf of themselves and their clients:

1. Did they have a copy or copies of the Agreements, have access to the Agreements or had they seen the Agreements, at any time prior to August 10, 2022? If so, when?
2. Were they aware of the existence of the arbitration provisions, whether directly or by having been told that such provisions existed, at any time prior to August 10, 2022? If so, when?

*Id.* at 6.

Having not yet received any responses, on February 10 at 5:40 p.m., MouseBelt's counsel emailed Defendants' counsel noting the lack of response, and inviting all counsel to a Zoom conference on February 13 at 11 a.m. for a final chance to meet and confer regarding the issues raised in the February 7 letter. Putterman Decl. Ex. B.

On February 13 at 7 a.m., Mr. Conrad responded to Mr. Putterman's February 7 letter and February 10 email. Putterman Decl., Ex. C. Mr. Conrad's email complained that MouseBelt had waited too long to pose this question to Defendants and that the issue has already been presented to and considered by the Court, and deflected back to the August 10, 2022 MouseBelt production. *Id.* Mr. Conrad stated that Coinbase would refuse to answer either of the questions posed in MouseBelt's February 7 letter, "reject[ing] the idea that we are required to engage with you any further on any of the subjects raised in your letter." *Id.* Mr. Conrad further stated that Defendants would object to any efforts by MouseBelt to seek relief from the Court based on their failure to deny prior knowledge of

the arbitration terms. *Id.* Counsel for Brian Armstrong and for ResearchHub thereafter also responded, stating that each of them "agrees with Mark Conrad's email" and did not plan to join the Zoom conference at 11 a.m. on February 13. *See* Putterman Decl. Ex. D.

Mr. Conrad and other counsel ***still did not deny*** that some or all of the Defendants and their respective counsel had possession of or had seen the agreements prior to August 10, 2022, or otherwise knew of the arbitration clauses. Defendants' refusal to answer the questions with simple denials suggests that they cannot do so without making a direct misrepresentation, and therefore that at least some of the Defendants or their counsel in fact possessed copies of the agreements, and/or were otherwise aware of a possible right to arbitrate, ***prior*** to August of 2022. *If* Defendants indeed had such knowledge while implying otherwise to the Court, Defendants' counsel would have violated their duty of candor toward the Court, and compromised the integrity of the Court's proceedings.

## II.   REQUESTED RELIEF

On this specific issue of whether Defendants' counsel have breached their duty of candor to the Court, MouseBelt respectfully requests the following relief:

1. That the Court issue an order requiring each of Defendants' counsel to directly answer the questions posed to them in Mr. Putterman's February 7, 2023 Letter, in individual declarations made under penalty of perjury; or

2. That the Court schedule a hearing or conference, with no briefing required, to further inquire into whether Defendants and their counsel had custody or access to the originals or copies of the Accelerator and/or SAFE Agreements, or knowledge of the arbitration provisions included therein, prior to August 10, 2022.

We respectfully suggest that whether additional proceedings are warranted could only be determined following the results of the relief requested above.

Dated:  February 15, 2023                                PUTTERMAN | YU | WANG LLP


By:  */s/ Donald J. Putterman*
DONALD J. PUTTERMAN
Attorneys for Plaintiff
MOUSEBELT LABS PTE. LTD